UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HOA VAN NGUYEN, | No. 1:25-cv-1926 CSK |
| Petitioner, | |
| v. | ORDER |
| SERGIO ALBARRAN, et al., | |
| Respondents. | |

I.  INTRODUCTION

Petitioner Hoa Van Nguyen proceeds through counsel with a petition for writ of habeas corpus under 28 U.S.C. § 2241.[1]  Petitioner, a national of Vietnam, was admitted to the United States in 1982 as a refugee, and in October 2001, petitioner was placed into removal proceedings based on his aggravated felony conviction, was detained, and an immigration judge ordered petitioner removed to Vietnam.  In April 2002, Immigration and Customs Enforcement ("ICE") released petitioner on an order of supervision after they were unable to remove petitioner to Vietnam.  On September 22, 2025, ICE re-detained petitioner when he was at the Sacramento airport.  This habeas action concerns petitioner's re-detention.  For the following reasons, this Court grants the petition and orders petitioner be released immediately.

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1).  (ECF No. 11.)

1

II.   FACTUAL BACKGROUND[2]

Petitioner is a native and citizen of Vietnam, was admitted into the United States on March 5, 1982, as a refugee, and became a lawful permanent resident on March 16, 1984. (ECF No. 1 at 3-4; ECF No. 12-1 at ¶¶ 5-6 (Decl. Armando Menesis, Deportation Officer).)

In 1993, petitioner was convicted in Texas state court of burglary of habitation. (ECF No. 1 at 4; ECF No. 12-1 at ¶ 7.) Petitioner was sentenced to nine years in prison. (ECF No. 12-1 at ¶ 7.)

On October 10, 2001, ICE (then U.S. Immigration and Naturalization Service) placed petitioner into removal proceedings as an alien who was convicted of an aggravated felony at any time after admission, and charged him with removability under section 237(a)(2)(A)(iii) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1227(a)(2)(A)(iii). (ECF No. 12-1 at ¶ 8.) Petitioner was taken into custody the same day, and detained pursuant to INA § 236(c), 8 U.S.C. § 1226(c). (ECF No. 12-1 at ¶ 9.) On October 25, 2001, an immigration judge noted petitioner "made no application for relief from removal," and ordered petitioner removed to Vietnam. (ECF No. 12-1 at ¶ 10; ECF No. 12-2 at 19; see ECF No. 1 at 4.) Petitioner waived his appeal of the removal. (ECF No. 12-1 at ¶ 10; ECF No. 12-2 at 19.)

Petitioner was not removed to Vietnam. On or about April 8, 2002, ICE released petitioner and placed him on an Order of Supervision ("OSUP"). (ECF No. 1 at 4; ECF No. 12-1 at ¶ 11.) Petitioner declares he was released because the government of Vietnam refused to issue petitioner a travel document. (ECF No. 16-1 at ¶ 10.[3])

Petitioner declares he was convicted in federal court of being a felon in possession of a firearm in 2009, served four and a half years in federal prison, and was released in May 2014.

---

[2] The factual background comes from the verified habeas petition, documents submitted by Respondents, the sworn declaration of DHS Deportation Officer Armando Meneses, and petitioner's sworn declaration. (See ECF Nos. 1, 12-1, 12-2, and 16-1.) A court "may treat the allegations of a verified ... petition [for writ of habeas corpus] as an affidavit." Laws v. Lamarque, 351 F.3d 919, 924 (9th Cir. 2003) (citing McElyea v. Babbitt, 833 F.2d 196, 197-98 (9th Cir. 1987)).

[3] Petitioner's original declaration was not signed by petitioner. (ECF Nos. 10-1, 15.) On January 20, 2026, petitioner's counsel filed petitioner's declaration bearing petitioner's signature. (ECF No. 16-1.)

(ECF No. 1 at 4; ECF No. 16-1 at ¶ 12.)  Petitioner was not re-detained by ICE but was again released under his supervision order because Vietnam refused to issue petitioner a travel document for a second time.  (ECF No. 1 at 4; ECF No. 16-1 at ¶ 12.)  Respondents do not contest this.  (See ECF No. 12.)

On September 22, 2025, ICE arrested petitioner and re-detained him while plaintiff was at the Sacramento airport waiting to board a flight with his fiancée.  (ECF No. 1 at 5; ECF No. 16-1 at ¶ 18.)  Petitioner declares that he was not told the reason why he was being detained either at the airport or while he was held in the holding room for many hours.  (ECF No. 1 at 5; ECF No. 16-1 at ¶¶ 12, 18.)  Respondents assert that petitioner was taken into custody to execute petitioner's final removal order, re-detained pursuant to INA § 241(a)(2), 8 U.S.C. § 1231(a)(2), and was provided with the Notice of Revocation of Release.  (ECF No. 12 at 2; ECF No. 12-1 at ¶ 15; ECF No. 12-2 at 21-22.)  The Notice of Revocation of Release dated September 22, 2025 states that the decision to detain petitioner in ICE custody was based on "review of your file and/or your personal interview on account of changed circumstances in your case." [4]  (ECF No. 12-2 at 21.)  No other information was provided in the Notice regarding the reason for his revocation.

"ICE began the process of requesting travel documents from Vietnam" for petitioner on or about October 8, 2025.  (ECF No. 12-1 at ¶ 16.)  As of January 7, 2026, the "request is still pending."  (Id.)  No additional information was provided by the government regarding its efforts to obtain travel documents for petitioner, including whether the government has even submitted a request to the Vietnam government for travel documents.  (See ECF Nos. 12, 12-1, and 12-2.)

III.   PROCEDURAL BACKGROUND

On December 18, 2025, petitioner filed his petition for writ of habeas corpus.  (ECF No. 1.)  On December 19, 2025, this Court directed respondents to file a response to the petition within fourteen days and ordered that petitioner may file a reply within seven days after being

---

[4] The Court need not resolve the factual dispute as to whether the Notice of Revocation was actually provided to petitioner when he was re-detained because even if it was, as described below, that notice was insufficient and the government failed to follow its own regulations governing revocation of release.  See  8 C.F.R. § 241.13(i).

3

served with the response.  (ECF No. 5.)

Following the filing of a stipulation to extend the briefing schedule, respondents were granted until January 10, 2026, to file their response, and petitioner's reply was extended to fourteen days.  (ECF Nos. 9, 10.)  On January 9, 2026, respondents timely filed an answer to the petition.  (ECF No. 12.)  On January 12, 2026, petitioner timely filed a reply/traverse to the answer.  (ECF No. 13.)

On January 12, 2026, this action was reassigned to this Court after the parties consented to the jurisdiction of the magistrate judge.  (ECF No. 14.)

IV.     LEGAL STANDARD

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States."  Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2).  "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody."  Preiser v. Rodriguez, 411 U.S. 475, 484 (1973).  A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law.  28 U.S.C. § 2241(c)(3).  Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest."  I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001).  A district court's habeas jurisdiction includes challenges to immigration detention.  See Zadvydas v. Davis, 533 U.S. 678, 687 (2001).

V.      DISCUSSION

The petition raises three claims for relief.  In claim one, petitioner argues he is being detained in violation of his right to substantive due process under the Fifth Amendment.  (ECF No. 1 at 15.)  Petitioner contends despite his compliance with the terms of his supervision order, petitioner was arrested and re-detained without an order revoking his supervision or disclosing any change in circumstances.  (Id.)  In claim two, petitioner argues that he is being detained in violation of his right to procedural due process under the Fifth Amendment.  (Id. at 16.)  Petitioner contends his due process rights were violated because he has a private interest in

freedom from physical restraint, the risk of erroneous deprivation of liberty and the probable value of procedural safeguards favors petitioner, and the unlawful re-detention wasted limited financial and administrative resources on petitioner who was not a flight risk or a danger to the community. (Id.) In addition, petitioner argues that petitioner's re-detention prior to revocation of his release and without notice and a meaningful opportunity to respond violated his constitutional rights to due process. Finally, in his third claim, petitioner contends respondents failed to comply with 8 C.F.R. § 241.13 at the time petitioner was re-detained because petitioner's supervision order was not revoked prior to re-detention, petitioner was not provided notice at the time of re-detention, and ICE has not disclosed the changed circumstances or shown that petitioner's removal was reasonably foreseeable at the time it revoked his release. (Id. at 8-9, 17.)

In response, respondents contend that ICE determined there was a significant likelihood of petitioner's removal in the reasonably foreseeable future and provided notice to petitioner of the revocation of release. (ECF No. 12 at 1, 3-4.) Respondents argue that the notice complied with 8 C.F.R. § 241.13, and informed petitioner of the applicable procedures for his detention, and because ICE complied with the regulation in revoking petitioner's release, petitioner's claims lack merit, and his detention is lawful under 8 U.S.C. § 1231(a)(6). (Id.) Further, respondents contend that petitioner's revocation of supervision took place in September 2025, and thus, under Zadvydas, is within the presumptively reasonable period not exceeding six months. (Id. at 3 (citing Zadvydas, 533 U.S. at 683).) Respondents argue that petitioner must show that he is "stuck in a 'removable but unremovable limbo,' as the petitioners in Zadvydas were." (Id. (quoting Prieto-Romero v. Clark, 534 F.3d 1053, 1063 (9th Cir. 2008)).) Respondents argue that unlike the petitioners in Zadvydas, petitioner is not stuck in mandatory unreviewable detention because petitioner can seek periodic review of his custody status. (Id. at 4.) Respondents further argue that petitioner failed to establish there is no significant likelihood of removal in the reasonably foreseeable future, and the review procedures available to petitioner under the C.F.R. render petitioner's due process claims meritless. (Id. at 4.)

In reply, petitioner contends that petitioner is not subject to mandatory detention because nothing in the text of 8 C.F.R. §§ 1231(a)(1)-(3) provides for mandatory detention following

5

release on an order of supervision.  (ECF No. 13 at 4-5 (citing Hoac v. Becerra, 2025 WL 1993771, at *3 (E.D. Cal. July 16, 2025)).)  Because petitioner was previously detained in October 2001 but released on a supervision order in April 2002, the 90 day removal period has long expired.  (Id. at 5.)  Second, petitioner argues that respondents failed to comply with 8 C.F.R. § 241.13(i) before re-detaining petitioner, and failed to meet their burden to show there is a significant likelihood that petitioner may be removed, failing to comply with 8 C.F.R. §§ 241.13(f), (i).  (Id. at 6-8.)

A set of regulations, 8 C.F.R. §§ 241.13(i) and 241.4(l), govern how and when ICE may revoke the release of a noncitizen who has been ordered removed.  Section 241.13(i) permits revocation of release "if, on account of changed circumstances, [ICE] determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future."[5] 8 C.F.R. § 241.13(i)(2).  Because all of petitioner's claims require examination of whether the government followed its own regulations that set out procedures in revoking release, procedures that protect important due process rights, the Court discusses these claims together.  See Vu v. Noem, 2025 WL 3114341, at *7 (E.D. Cal. Nov. 6, 2025); Nguyen v. Hyde, 788 F. Supp. 3d 144, 152 (D. Mass. 2025) (noting that 8 C.F.R. § 241.13(i) was "promulgated to protect a fundamental right derived from the Constitution").

Citing Zadvydas and Prieto-Romero v. Clark, 534 F.3d 1053, 1063 (9th Cir. 2008), respondents argue that petitioner failed to establish there is no significant likelihood of removal in the reasonably foreseeable future.  (ECF No. 12 at 3-4.)  Zadvydas dealt with a noncitizen who had been detained and never released following a final order of removal.  Zadvydas, 533 U.S. at 701.  In that context, the Supreme Court held that "once [an] alien" has been detained for six months and "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing."  Id.

---

[5] Section 241.13 also provides for revocation if a noncitizen "violates any of the conditions of release" in the "order of supervision."  8 C.F.R. § 241.13(i)(1).  Respondents do not argue that petitioner violated any release conditions or that his release was revoked on this basis.  (See ECF No. 12.)

1    But the burden-shifting framework from Zadvydas does not apply here.  As another court

2 observed in a similar context, "[t]his case is not about ICE's authority to detain in the first place

3 upon an issuance of a final order of removal as in Zadvydas."  Nguyen v. Hyde, 788 F. Supp. 3d

4 at 152.  "[T]his is not your typical first round detainment of an alien awaiting removal.  Petitioner

5 was previously detained, then released on supervised release for several years, and his 90-day

6 removal period expired."  Escalante v. Noem, 2025 WL 2206113, at *3 (E.D. Tex. Aug. 2, 2025).

7 As in Nguyen v. Hyde, "[t]his case is about ICE's authority to re-detain [petitioner] after he was

8 issued a final order of removal, detained, and subsequently released on an [order of supervision]."

9 Nguyen v. Hyde, 788 F. Supp. 3d at 152.  Here, petitioner was placed in removal proceedings in

10 October 2001 and detained; ordered removed to Vietnam on October 25, 2001 and continued in

11 detention; and then released on April 8, 2002 under an order of supervision after the government

12 was not able to remove petitioner to Vietnam.

13    ICE's regulations, 8 C.F.R. §§ 241.13(i) and 241.4(l), apply to non-citizens in petitioner's

14 situation, and those regulations outline the process to be followed.  Id.; Escalante, 2025 WL

15 2206113, at *3 ("After Zadvydas, the immigration regulations were revised to implement

16 administrative review procedures for . . . those who are re-detained upon revocation of their

17 supervised release." (citing 8 C.F.R. § 241.13)).  In Escalante, the court observed that:

> Section 241.13(i)(2)[,] [which is] entitled "Revocation for removal[,]" provides that "the Service may revoke an alien's [supervised] release under this section and return the alien to custody if, on account of changed circumstances, *the Service determines* that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(2) (emphasis added). Section 241.4(b)(4)[,] which is entitled *"Service determination under 8 C.F.R. 241.13[,]"* states that, after supervised release under section 241.13, "*if the Service subsequently determines*, because of a change of circumstances, that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future [to the country to which the alien was ordered removed or] a third country, the alien shall again be subject to the custody review procedures under this section." 8 C.F.R. § 241.4(b)(4) (emphasis added).

26 Escalante, 2025 WL 2206113, at *3 (emphasis in original).

27    These "regulations clearly indicate" that when ICE revokes release to effectuate removal,

28 "it is [ICE's] burden to show a significant likelihood that the alien may be removed."  Escalante,

7

2025 WL 2206113, at *3; see also Roble v. Bondi, 2025 WL 2443453, at *4 (D. Minn. Aug. 25, 2025) ("[T]he regulations at issue in this case place the burden on ICE to first establish changed circumstances that make removal significantly likely in the reasonably foreseeable future."); Abuelhawa v. Noem, 2025 WL 2937692, at *8 (S.D. Tex. Oct. 16, 2025) ("[U]pon revocation of release, the Government bears the burden to show a significant likelihood that the alien may be removed in the reasonably foreseeable future."); Nguyen v. Hyde, 788 F. Supp. 3d at 150. "Imposing the burden of proof on the alien each time he is re-detained would lead to an unjust result and serious due process implications." Escalante, 2025 WL 2206113, at *3. Thus, this Court must determine whether respondents have met their burden to show a changed circumstance indicating a significant likelihood of removal.

In their answer, respondents identify no changed circumstances concerning petitioner, and identify no facts showing there is a significant likelihood of petitioner's removal in the reasonably foreseeable future. Respondents point to the declaration of Deportation Officer Meneses who declared that "[o]n or about October 8, 2025, ICE *began the process of requesting* travel documents from Vietnam for petitioner," which remains pending. (ECF No. 12-1 at ¶ 16) (emphasis added). There is no evidence the government has even submitted the request for travel documents for petitioner. Further, despite ICE's failure to remove petitioner over the last 24 years, respondents rely on the Notice of Revocation of Release that states "ICE has determined that there is a significant likelihood of removal in the reasonably foreseeable future in [petitioner's] case." (ECF No. 12-2 at 21.) Respondents do not explain how ICE reached that determination. Aside from their statement that "ICE began the process of requesting travel documents from Vietnam for Petitioner," respondents do not provide any other information, let alone information regarding specific efforts to obtain such travel documents, including whether they have actually submitted a request to the Vietnamese Consulate or whether there is any indication that the Vietnamese government is likely to issue a travel document for petitioner.[6]

---

[6] The Court notes that this is in stark contrast to cases where the government has followed its regulations for revoking release for noncitizens like petitioner because in those cases, the government provides sufficient details about its efforts, including submitting documentation of actual travel documents obtained. See, e.g., Xiong v. Wofford, 2026 WL 177739, at *2-3, 5 (E.D.

(See ECF Nos. 12, 12-1.) Respondents have not explained why obtaining a travel document from Vietnam for petitioner is more likely now when they have not been able to obtain a travel document since October 2001. Accord Hoac, 2025 WL 1993771, at *4 ("The fact that Respondents intend to complete a travel document request for Petitioner does not make it significantly likely he will be removed in the foreseeable future.").

Moreover, even if there were evidence of a "possibility that Vietnam will accept petitioner at some point . . . [that] is not the same as a significant likelihood that he will be accepted in the reasonably foreseeable future." Nguyen v. Scott, 2025 WL 2419288, at *16 (W.D. Wash. Aug. 21, 2025). "The phrase "significant likelihood," as used in the regulation, requires something more than a mere possibility." Vu v. Noem, 2025 WL 3114341, at *7. Respondents have not provided any evidence demonstrating that petitioner's removal is significantly likely, and thus failed to meet their burden to show a significant likelihood that petitioner will be removed in the reasonably foreseeable future.

The regulations discussed above, 8 C.F.R. §§ 241.13(i), also set forth the procedures to be followed in revoking release, procedures that protect important due process rights. See Nguyen v. Hyde, 788 F. Supp. 3d at 152 (observing that 8 C.F.R. § 241.13(i) was "promulgated to protect a fundamental right derived from the Constitution"). Those procedures include:

> Upon revocation, the alien will be notified of the reasons for revocation of his or her release. The Service will conduct an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification. The alien may submit any evidence or information that he or she believes shows there is no significant likelihood he [will] be removed in the reasonably foreseeable future, or that he [] has not violated the order of supervision. The revocation custody review will include an evaluation of any contested facts relevant to the revocation and a determination whether the facts as determined warrant revocation and further denial of release.

8 C.F.R. § 241.13(i)(3); see Minh Nhat Phan v. Noem, 2025 WL 2898977, at *4 (S.D. Cal. Oct. Cal. Jan. 22, 2026).

10, 2025).[7]

The Court finds that respondents violated its own regulation, 8 C.F.R. § 241.13. Section 241.13 provides "special review procedures" governing ICE's authority to revoke a removable alien's release in cases where, as here, ICE has (1) previously determined "that there is no significant likelihood of removal in the reasonably foreseeable future," and then (2) subsequently seeks to revoke release based on changed circumstances resulting in a "determin[ation] that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." Id.

Petitioner declares he was released on a supervision order because Vietnam refused to issue travel documents, which respondents do not contest or appear to dispute. (See ECF No. 1; ECF No. 12.) In response to petitioner's argument that he was not provided with an explanation for why he was re-detained, respondents rely solely on the Notice of Revocation of Release, dated September 22, 2025. (See ECF No. 12 at 3.) The Notice of Revocation states that the revocation was based on "review of your file and/or your personal interview on account of changed circumstances in your case." (ECF No. 12-2 at 21.) "Courts in this district, circuit, and across the country have held that such a vague, generic statement is insufficient notice." Hashemi v. Noem, 2025 WL 3468694, at *5 (C.D. Cal. Nov. 19, 2025) (collecting cases). The conclusory statement in the Notice of Revocation offers no information regarding the alleged "changed circumstances." The notice requirement is important because it provides the noncitizen with notice of the reasons for his revocation, and an opportunity to meaningfully respond to the reasons for revocation and submit evidence in opposition, as permitted under § 241.13(i). Id. Further, respondents do not assert or present any evidence that petitioner was granted an informal interview or provided with an "opportunity to respond to the reasons for revocation," as required by 8 C.F.R. § 241.13(i)(3) and described in the Notice of Revocation. (See ECF Nos. 12, 12-1, 12-2 at 21.) The government's failure to provide sufficient notice of the reasons for revocation, an informal interview, and an opportunity to respond to the reasons for revocation does not comply with the

---

[7] Petitioner also contends that the factors in 8 C.F.R. § 241.13(f) apply here. (ECF No. 13 at 7.) However, subsection (f) addresses factors for consideration in determining whether to recommend further detention or release of a detainee during the initial detention review process. 8 C.F.R. § 241.4.

1  regulations and renders petitioner's re-detention unlawful.[8]

2  Courts have held that "where an immigration 'regulation is promulgated to protect a fundamental right derived from the Constitution or a federal statute ... and [ICE] fails to adhere to it, the challenged [action] is invalid.'" Rombot, 296 F. Supp. 3d at 388 (quoting Waldron v. I.N.S., 17 F.3d 511, 518 (2d Cir. 1993)); see also Truong v. Noem, 2025 WL 2988357, at *6 (S.D. Cal. Oct. 6, 2025) ("Courts have found that when ICE fails to follow its own regulations in revoking release, the detention is unlawful, and the petitioner's release must be ordered.") (collecting cases).

When the government grants a noncitizen parole or supervised release, it creates a protected liberty interest subject to due process clause protection. See Sanchez v. LaRose, 2025 WL 2770629 (S.D. Cal. Sept. 26, 2025). These protections include at least notice and an opportunity to be heard regarding the revocation. Id.; Mathews v. Eldridge, 424 U.S. 319, 348 (1976) ("The essence of due process is the requirement that 'a person in jeopardy of a serious loss [be given] notice of the case against him and the opportunity to meet it."). In Saengphet v. Noem, the district court ruled that notices revoking protected liberty interests are constitutionally inadequate when they lack individualized explanations of the changed circumstances giving rise to revocation. 2025 WL 3240808, at *5 (S.D. Cal. Nov. 20, 2025). Constitutionally inadequate notice also often leads to constitutionally inadequate opportunity to be heard, because opportunity to be heard must be meaningful to be constitutionally sufficient. See Sanchez, 2025 WL 2770629 at *3; Ying Fong v. Ashcroft, 317 F. Supp. 2d 398, 403 (S.D.N.Y. 2004) ("The opportunity to be heard must be meaningful, that is, an opportunity granted at a meaningful time and in a meaningful manner."). A detainee's opportunity to be heard is not meaningful if the detainee has not been informed of the circumstances of his revoked release in a manner sufficient to allow his response. Sarail A. v. Bondi, 2025 WL 2533673, at *10 (D. Minn. Sept. 3, 2025). While this Court recognizes that the government has an interest in enforcing immigration laws, the

---

[8] Petitioner is subject to a final order of removal, which he has not appealed. (See ECF No. 12-2 at 19.) The government may revoke petitioner's supervision and remove petitioner, but must do so lawfully, following the requirements of the Constitution and its own regulations. It has failed to do so here.

government's interest in re-detaining petitioner without adequate notice and an opportunity to challenge the revocation of his release is low. See Ortega v. Bonnar, 415 F. Supp. 3d at 970; Doe v. Becerra, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. March 3, 2025). "That the Government may believe it has a valid reason to detain petitioner does not eliminate its obligation to effectuate the detention in a manner that comports with due process." E.A. T.-B. v. Wamsley, 795 F. Supp. 3d 1316, 1322 (W.D. Wash. 2025). Respondents identify no reason why adequate notice and an informal interview "to afford the alien an opportunity to respond to the reasons for revocation stated in the notification" was not provided to petitioner as required by their own regulations. See 8 C.F.R. § 241.13(i)(3). As discussed above, petitioner was released under an order of supervision in April 2002; re-detained on September 22, 2025; issued a Notice of Revocation of Release that stated "changed circumstances" as the reason for revocation without any other information; and petitioner was not provided with an informal interview or the opportunity to respond to the reasons for revocation.

Thus, this Court finds that ICE's failure to comply with 8 C.F.R. § 241.13 violated petitioner's due process rights. See Minh Nhat Phan v. Noem, 2025 WL 2898977, at *4-5 (S.D. Cal. Oct. 10, 2025); Hashemi, 2025 WL 3468694, at *5.

In conclusion, the government failed to follow its own regulations by failing to provide petitioner with adequate notice of the reasons why his release was revoked; failing to provide him with an informal interview; failing to provide him with the opportunity to respond to the reasons for his revocation; and failing to demonstrate that there is a significant likelihood that petitioner will be removed to Vietnam in the reasonably near future. Such noncompliance resulted in a violation of petitioner's due process rights. Accordingly, petitioner's habeas petition is granted, and petitioner is ordered released immediately to return him to the status quo before the pending controversy. See Yang v. Kaiser, 2025 WL 2791778, at *11 (E.D. Cal. Aug. 20, 2025) (status quo ante is "the last uncontested status which preceded the pending controversy."). Because petitioner challenges his current re-detention, the last uncontested status of petitioner before his re-detention in September 2025 was his release under the April 2002 order of supervision.

///

## VI. ORDERS

Accordingly, IT IS HEREBY ORDERED that:

1. The petition for writ of habeas corpus is granted.
2. Respondents are ordered to release petitioner Hoa Van Nguyen immediately under the same conditions he was previously released in his April 2002 order of supervision. Respondents are ENJOINED AND RESTRAINED from re-detaining petitioner absent compliance with constitutional protections, which include, at a minimum, compliance with the requirements of 8 C.F.R. § 241.13(i) for revocation of release, and any other applicable statutory and regulatory procedures.
3. Within seven days of the date of this order, the parties shall file a joint status report addressing petitioner's status.
4. The Clerk of the Court is directed to enter judgment in favor of petitioner and close this case.

Dated: January 23, 2026

*[signature: Chi Soo Kim]*
CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE

/1/nguy1926.157.2241.imm